IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK VAN'S AUTO TAG, LLC,** *Plaintiff* | **CIVIL ACTION** |
| v. | |
| **SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,** *Defendant* | **No. 20-2740** |

**MEMORANDUM**

PRATTER, J.                                                                                           JANUARY 27, 2021

An insurance purchaser hopes for the best, fears the worst, and ultimately often pays for something in the middle. Choosing what to insure—and thus what to pay for—is inherently an exercise in odds making and probability; it is rarely one of clairvoyance. That a particular loss is not covered is not necessarily indicative of ambiguity or unfairness, but, perhaps is instead a lesson in the anonymous adage that "In every insurance policy the big print giveth and the small print taketh away."

Like many locally owned and operated businesses in the Philadelphia area, Frank Van's Auto Tag enterprise has suffered economically during the COVID-19 pandemic. It temporarily shuttered its operations in March 2020 when the Commonwealth issued shutdown orders as a governmental effort to slow the spread of the virus. That shutdown cost Frank Van's business income. So, under the terms of its commercial property insurance policy, it sought coverage benefits from its insurance carrier, Selective Insurance Company of the Southeast.

Selective denied Frank Van's claim on the grounds that the plain language of the policy bars the claim. So, Frank Van's filed this lawsuit on behalf of a putative class of Selective insureds. Selective responded with a motion to dismiss.

For the reasons that follow, the Court grants Selective's motion and dismisses the case without prejudice and with permission to Plaintiff to file an amended complaint within sixty (60) days of the entry of the order accompanying this Memorandum.

## BACKGROUND

Frank Van's is an auto title transfer, tag, and registration business. It also provides notary public services. It has two locations in the Philadelphia area. Since 2016, Frank Van's has secured commercial property insurance coverage through Selective under an "all risk" policy.[1] An all risk policy means that all risks are covered unless expressly excluded. The Policy provides coverage for business interruptions caused by a Civil Authority and coverage for business income and extra expenses when the business is suspended due to a covered loss. The Policy extends through April 2021.[2]

In March 2020, Pennsylvania Governor Tom Wolf announced a series of statewide orders described as intended to slow the spread of the COVID-19 virus. Governor Wolf first signed an emergency disaster declaration on March 6. Less than two weeks later, on March 19, the Commonwealth suspended all non-essential business operations. Doc. No. 1 (Compl.) ¶ 18. The shutdown orders were described as designed to prevent additional person-to-person contact and potential exposure to and spread of the virus. Compl. ¶ 3. Because Frank Van's business is considered "non-essential," it temporarily closed its locations.

---

[1]  Describing a policy as "All Risks" is rather a misnomer when it contains no fewer than 14 lettered exclusions. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 234 (3d Cir. 2002).

[2]  Frank Van's attached the applicable policy as an exhibit to the Complaint, but it is not viewable on ECF. Doc. No. 1-4. Selective has attached a viewable version with its motion to dismiss. Doc. No. 6-3. References to the Policy are to the document attached as Exhibit A to Selective's motion to dismiss. The Court accepts that the document provided by Selective is identical to that which Frank Van's attached to the Complaint.

Frank Van's timely submitted a claim to its insurer, Selective, seeking reimbursement for losses sustained during the closure period. It claimed coverage on the basis that Pennsylvania's closure orders constitute a "Covered Cause of Loss" under the Policy. Compl. ¶ 19. Specifically, Frank Van's sought coverage under the Policy's Business Income, Extended Business Income, Extra Expense, and Civil Authority provisions. Compl. ¶ 20. Although there was no presence of COVID-19 at the covered premises, Frank Van's described the closure orders as a "blockade" preventing employees and customers from entering the business for its intended purpose. Compl. ¶¶ 16, 19.

Selective denied the claim because Frank Van's did not suffer a physical loss or damage to its covered premises. Compl. ¶ 23. The gravamen of the denial was simply that the business—like many others—was suspended during the shutdown. Selective denied the claim on alternative grounds that the Policy contains a virus exclusion which bars coverage for damage caused by a virus. Doc. No. 1-5 (Claim Denial).

Frank Van's filed this action seeking a declaration that its business losses were covered and to certify a class of similarly situated insureds. Selective responded by moving to dismiss the Complaint with prejudice.

## LEGAL STANDARDS

### I.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. To provide defendants with fair notice, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Third Circuit Court of Appeals instructs the reviewing court to conduct a two-part analysis. Any legal conclusions are separated from the well-pleaded factual allegations and disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

The Court then determines whether the facts alleged establish a plausible claim for relief. *Id.* at 211.

To that end, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210. If the Court can only infer "the mere possibility of misconduct," the complaint has failed to show an entitlement to relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court need not ignore or discount reality. Nor must the Court "accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000).

## II. Interpreting Insurance Policies

The parties agree that Pennsylvania law governs. The interpretation of an insurance contract is, of course, a question of law. *Duncan v. Omni Ins. Co.*, 210 F. Supp. 3d 652, 654 (E.D. Pa. 2016), *aff'd*, 719 F. App'x 102 (3d Cir. 2017). The Court must interpret the plain text of the contract in its entirety and give effect to all provisions. *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). When the language of the policy is clear and unambiguous, the Court must enforce that language. *Id.* at 321.

However, where the language is susceptible to more than one interpretation, the provision is ambiguous. In that case, the ambiguous provision must be construed against the insurer and in favor of the insured. A reasonable interpretation proposed by the insured will control. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999). But ambiguity does not exist merely because the parties disagree about the meaning of the policy language. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). Nor can the court "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Wilson v. Hartford Cas. Co.*, No.

CV 20-3384, 2020 WL 5820800, at *6 (E.D. Pa. Sept. 30, 2020) (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).

The insured has the burden of establishing coverage under the policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law). Once the insured has met that burden, the burden shifts to the insurer to prove that an exclusion in the policy operates to deny coverage. *Id.* Insurance contracts—and the policy exclusions—are strictly construed against the insurer as drafter. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001).

## Discussion

Frank Van's asserts coverage under the Business Income, Extended Business Income, Extra Expense, and Civil Authority coverage extensions in its Policy. Compl. ¶ 20. Selective contends that Frank Van's has no "covered loss" under any of the cited provisions. But even if Frank Van's could establish a covered loss, Selective maintains that the Virus Exclusion and the Ordinance or Law Exclusion bar coverage.

Under Pennsylvania law, the Court first considers whether Frank Van's has met its burden of establishing coverage, before evaluating whether any of the exclusions apply.

### I.   The All-Risk Policy

#### A. Coverage

Frank Van's all-risk policy protects against "direct physical loss of or physical damage to Covered Property at the premises described . . . caused by or resulting from a covered Cause of Loss." Doc. No. 6-3 (Policy) at 61. "Covered Causes of Loss" means "direct physical loss unless the loss is excluded or limited." Policy at 62.

To state a claim under Business Income, Extra Expense, and Civil Authority provisions, whatever loss or damage sustained must be "caused by or result from a Covered Cause of Loss." Policy at 66, 68, 69.

Under the Policy, Selective will "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" The suspension of operations "must be caused by direct physical loss of or damage to property at the described premises," and such loss must be caused by or result from a "Covered Cause of Loss." Policy at 66.

Likewise, coverage under the Extra Expense provision is available for such costs incurred "during the 'period of restoration' that would not have occurred if there had been no direct physical loss or damage to the property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." Policy at 68.

Relevant here, "Period of restoration" means, in part, the:

> [P]eriod of time that begins 72 hours after the time of direct physical loss or damage for Business Income Coverage or [i]mmediately after the time of direct physical loss or damage for Extra Expense Coverage caused by or resulting from any Covered Cause of Loss at the described premises.

The "period of restoration" ends on the earlier of the date when the covered premise is "repaired, rebuilt or replaced" or when business is "resumed at a new permanent location." Policy at 94.

The Policy further defines suspension of operations as either "the partial slowdown or complete cessation of [the] business activities" or when "a part or all of the described premises is rendered untenantable." Policy at 67.

Under the Civil Authority provision, when a "Covered Cause of Loss" causes damage to a property *other* than the covered premises, Selective will pay for "the actual loss of Business Income [the insured] sustain[s] and necessary Extra Expense caused by action of civil authority

6

that prohibits access to the described premises." However, Civil Authority coverage is available only when

> "(1) access to the area immediately surrounding the damaged property is prohibited by the civil authority as a result of the damage" (which can be no more than one mile from the covered premises) and "(2) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . . ."

Policy at 69.

### B. Exclusions

There are two relevant exclusions in the Policy. First, the "Virus Exclusion" does not provide coverage for loss or damage caused directly or indirectly due to "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Policy at 80.

Second, the "Ordinance or Law Exclusion" does not pay for loss or damage caused indirectly or directly from "the enforcement of or compliance with any ordinance or law (a) regulating the construction, use or repair of any property or (b) requiring the tearing down of any property, including the cost of removing its debris." Policy at 77-78.

## II.    Whether Frank Van's Establishes Coverage

The underlying question is whether the Policy supports coverage for pure economic losses, and not only physical losses. The relied-upon provisions all require that there be a "Covered Cause of Loss."

### A. Business Income Coverage

The parties vigorously dispute whether the effects of a government-imposed business shutdown constitute a Covered Cause of Loss under the Policy. That is because coverage under the Business Income provision requires "direct physical loss of or damage to Covered Property." Policy at 66. Selective contends that neither the COVID-19 virus or the shutdown orders caused

7

physical loss or damage to Frank Van's property. For this reason, Frank Van's has not suffered a cognizable loss under the Policy. So, Selective argues, Frank Van's is not entitled to Business Income coverage.

Frank Van's appears to concede that it has not suffered actual tactile physical damage. To be sure, this concession is not fatal to stating a claim for coverage. That is because the Policy inserts the disjunctive "or" between physical loss and physical damage. But it does require the insured to then establish some physical loss. To do so, Frank Van's proposes a more expansive definition of "physical loss" that is not limited to only tangible changes. Instead, physical loss is sustained when the insured property's function or usefulness was eliminated—temporarily or permanently. Doc. No. 7 at 14.[3] Thus, Frank Van's reads "physical loss" to encompass "loss of use" of the property. So, the argument goes, because the shutdown orders prevented access to and use of the business, Frank Van's sustained a physical loss.

The Court must give effect to the words in the contract—including the requirement that there be some "direct physical loss of or damage to property" at Frank Van's premises. The Policy does not define "direct physical loss" or "direct physical damage." But failing to define a coverage term does not mean it is ambiguous. *Heebner v. Nationwide Ins. Enter.*, 818 F. Supp. 2d 853, 857 (E.D. Pa. 2011). To the contrary, the Court must read the terms in their plain and generally accepted meanings.

As a starting point, both the words "direct" and "physical" modify "loss of property" and "damage to property." *See Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (applying Pennsylvania law) (finding the phrase "direct physical loss or damage," when considered in the context of the insurance policy, "requires that claimed loss or damage must be physical in nature").

---

[3]   The Court uses the pagination included by ECF.

Direct is defined in part as "characterized by close logical, causal, or consequential relationship." *Direct*, Merriam-Webster Dictionary (last visited Jan. 19, 2021). It is the absence of an intervening event or influence. Physical means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019). A leading insurance treatise emphasizes that a requirement that the loss be "'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal." 10A Couch on Ins. § 148:46 (3d ed. 2020).

The Court is likewise guided and, ultimately limited, by relevant precedent. The Third Circuit Court of Appeals has previously addressed the meaning of "direct physical loss or damage" in the context of whether asbestos in a building triggered coverage. In *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, the appellate court interpreted physical damage to property to entail a "distinct, demonstrable, and physical alteration" of a structure. 311 F.3d 226, 235 (3d Cir. 2002). "Physical damage to a building as an entity by sources unnoticeable to the naked eye must meet a higher threshold." *Id.*

As to what constitutes "physical loss" under the policy, the appellate court found that when a structure has been rendered "uninhabitable and unusable," the owner has suffered a "distinct loss." But when the "structure continues to function—it has not lost its utility." *Id.* at 236. In that case, there was no physical loss that would be eligible for coverage.

The growing body of case law has interpreted the phrase "direct physical loss of or damage" to require a direct nexus between the alleged loss and the physical conditions of the covered premise.[4] That is, there must be some issue with the *physical* premises which precludes

---

[4] Although the Court takes note of the growing body of case law in COVID-19 business interruption insurance cases, it makes an independent judgment. This is what is required. *Cf. United States v. Nasir*, 982 F.3d 144, 170 n.28 (3d Cir. 2020) ("[C]ounting up judges who see the issue differently does not alter our obligation. The answer to the old saw that 'fifty million Frenchmen can't be wrong' is yes, they can."). Here, however, given the language of the Policy at issue, the Court does not disagree with the shared

or impedes the business operations, thereby causing the losses complained-of. *See, e.g., Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. CV 20-2401, 2021 WL 131556, at *6 (E.D. Pa. Jan. 14, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, No. CV 20-1869, 2020 WL 7395153, at *5 (E.D. Pa. Dec. 17, 2020); *Kessler Dental Assocs., P.C. v. Dentists Ins. Co.*, No. 2:20-CV-03376-JDW, 2020 WL 7181057, at *4 (E.D. Pa. Dec. 7, 2020); *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. CV 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020).

Putting these terms together given their ordinary usage and in the context of the Policy, the Court is persuaded by the rulings of courts within the Circuit that have addressed disputes essentially the same as this one in terms of factual predicates and policy language. To find otherwise reads out operative language from the terms of coverage.

Business Income coverage is available to an insured during the "period of restoration." Policy at 66. The "period of restoration" ends either when the covered premise is "repaired, rebuilt or replaced" or "resumed at a new permanent location." Policy at 94. So, this limiting language inherently contemplates addressing some physical condition of the property. However, if the Court adopts Frank Van's interpretation that coverage exists any time there is mere loss of the opportunity to function, the qualifying language of repair, rebuild or replace is rendered surplusage. The Commonwealth's "rules of construction do not permit words in a contract to be treated as surplusage . . . if any reasonable meaning consistent with the other parts can be given to it." *Gen. Refractories Co. v. First State Ins. Co.*, 94 F. Supp. 3d 649, 661 (E.D. Pa. 2015).

---

conclusion that loss or damage cannot merely be economic and still be "physical." That conclusion could conceivably be different if, for example, the policy language stated that the coverage was triggered by "loss of physical use of the property" or some such configuration.

10

Similarly, if all that is needed for coverage is the mere inability to access the property—as is proposed here—the Business Income provision would swallow the Civil Authority provision. Under this proposed interpretation, an insured could seek and obtain coverage *any* time there is a loss of use under the Business Income provision. But the Civil Authority provision discussed in Section I.B., *supra*, sets forth limited circumstances in which curtailed access to covered premises triggers coverage. There is no way to reconcile the existence of this separate carve-out under the Civil Authority provision, or why it would be needed. Nor does Frank Van's propose one. The Court will not read in ambiguity when it must "resort to a strained contrivance" to find one. *Wilson*, 2020 WL 5820800, at *6 (internal quotation marks omitted).

This Complaint does not allege any facts regarding the physical state of the premises.[5] Instead, it alleges that it forewent business income during the closure period. Once the shutdown order lifted, Frank Van's could immediately resume business, *without* a period of restoration. That is because there was no damage to the property and the loss was only economic.

A government-imposed order which limits access to the covered premises—but has not been prompted by the condition of the physical structure—causes at most an economic loss. Pure economic losses, including loss of business and lost profits, are intangible losses. *See* 9A Couch on Insurance § 129.7; *Newchops Rest. Comcast LLC*, 2020 WL 7395153, at *5. And an intangible loss is not "direct physical" loss or damage. So, it does not fall within the Policy's "Covered Causes of Loss." To find otherwise would be to read out words from the Policy, and in so doing, re-write a contract, or to construe the words in a tortured and unnatural way. The Court declines

---

[5] The Court declines to adopt the reasoning of *Studio 417, Inc. et al. v. The Cincinnati Insurance Co.*, a decision from the Western District of Missouri, which denied the insurer's motion to dismiss. No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020). But even if the Court were persuaded by its logic, Frank Van's has not alleged that COVID-19 "particles attached and damaged" its property, as did the plaintiffs in *Studio 417*.

11

to do either here—although it does not ignore that Frank Van's has allegedly sustained an economic loss.

Businesses have sustained breath-taking economic losses during shutdown periods. Those losses are not merely recorded on ledger sheets. They translate painfully into the day-to-day lives of members of every community. As distressing as the rush to disclaim coverage may surely be, that is the case and controversy this Court must address.[6] The existence of economic loss is not in dispute here. Rather, the question is whether the Policy covers this type of loss. Frank Van's has not pled facts that COVID-19 caused physical damage or loss to its property to trigger Business Income coverage.

Extended Business Income coverage applies only if Business Income coverage applies. Policy at 67. Because the Court finds that, on the current state of the pleadings, Business Income coverage does not apply, neither does the extended coverage.

### B. Extra Expense Coverage

Extra Expense coverage covers expenses during the "period of restoration" that the insured would not have incurred but for the direct physical loss or damage to property at the covered premises. Policy at 68. As with Business Income coverage, this provision requires pleading facts of direct physical loss or damage caused by a Covered Cause of Loss.

As stated above, Frank Van's has not done so here. So, Frank Van's cannot rely on this section either.

---

[6] But the weight of domestic case law, largely dismissing claims against insureds with prejudice, is clearly not the only approach to interpreting insurance contracts in a common law system. Indeed, across the pond, the Financial Conduct Authority—the United Kingdom's regulator for the insurance industry—recently prevailed in its test case before the UK's highest court, seeking guidance on whether non-damage business interruption losses were covered. The UK Supreme Court largely endorsed a policyholder-favored approach and clarified that insureds may be eligible for coverage benefits for business interruption losses arising out of the pandemic. *Fin. Conduct Auth. v. Arch Ins. (UK) Ltd. et al.* [2021] UKSC 1.

12

### C. Civil Authority Coverage

Frank Van's likewise does not state a claim for coverage under the Civil Authority provision based on Governor Wolf's orders. The Civil Authority provision covers loss of income and extra expenses incurred when (1) a civil authority prohibits access to the covered premises, (2) there is a Covered Cause of Loss to property in the immediate area of the covered premises, and (3) the order prohibiting access is taken in response to dangerous physical conditions resulting from the Covered Cause of Loss. Policy at 69. However, there are several gating issues which prevent Frank Van's from establishing entitlement to coverage under this section.

Fatal to Frank Van's claim here, it would have to plead that there was a "Covered Cause of Loss" to a nearby property. As with the Business Income and Extra Expense provisions, the shutdown order does not constitute a "Covered Cause of Loss" for purposes of invoking the Civil Authority provision. This finding alone forecloses coverage under the Civil Authority provision.

Moreover, Frank Van's does not allege that other properties sustained damage to trigger protection under this provision. It concedes that the closure orders were not issued because of physical damage or loss sustained to a nearby property. Rather, the orders enforced the stated need for social distancing to prevent future viral transmission. Compl. ¶¶ 16-19. But the fear of the virus in nearby properties does not establish physical damage. *See e.g.*, *4431, Inc. v. Cincinnati Ins. Cos.*, No. 5:20-CV-04396, 2020 WL 7075318, at *12 (E.D. Pa. Dec. 3, 2020); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:20-CV-03342, 2020 WL 7024287, at *4 (E.D. Pa. Nov. 30, 2020); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 134 n.8 (2d Cir. 2006) (no civil authority coverage for airline following airport shutdown in response to September 11 attacks because order was based on "fears of future attacks" rather than "direct result of damage").

For the same reasons as above, Frank Van's losses are not cognizable under the plain text of the Civil Authority provision.

Under the terms of the Policy as written, Frank Van's claim for coverage fails.

### III. Whether Exclusions Bar Coverage

#### A. Virus Exclusion

Even if Frank Van's could state a claim under the above-mentioned provisions, it must still contend with the Virus Exclusion. The Policy provides that Selective "will not pay for loss or damage caused directly or indirectly by . . . any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." Policy at 77, 80. The Virus Exclusion, which appears in the Businessowners Coverage Form, applies to the Policy writ large—unless it is expressly exempted.

Frank Van's contends that the Virus Exclusion does not preclude Civil Authority coverage because the proximate cause of its loss was the shutdown orders—not the virus. Compl. ¶ 21. But this argument—though facially compelling—ultimately fails for the same reasons as above. Frank Van's cannot point to a physical loss or damage, which is required to trigger Civil Authority coverage. Moreover, the plain text of the provision bars coverage for loss or damage caused "indirectly" by any virus. And the anti-concurrent-clause language provides that the exclusion applies even if the virus is not the sole cause of loss. Policy at § I(B)(1)(j) (precluding coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss"). *See Moody et al. v. Hartford Fin. Grp, Inc. et al.*, No. CV 20-2856, 2021 WL 135897, at *8 (E.D. Pa. Jan. 14, 2021). Both parties admit that the March 2020 Closure Orders were issued with the plan to stem the spread of COVID-19.

Frank Van's next asserts that the language in the Virus Exclusion is ambiguous. But the Court is hard-pressed to find ambiguity in an otherwise unambiguous provision. Indeed, several

14

courts within this Circuit have likewise concluded the language of the provision is not only unambiguous, but unambiguously bars coverage for COVID-19-related losses. *See, e.g., Humans & Res., LLC v. Firstline Nat'l Ins. Co.*, No. 20-CV-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021); *Wilson*, 2020 WL 5820800, at *7.

So, Frank Van's claims there is structural ambiguity as to when the Virus Exclusion applies. The Court cannot agree. The Virus Exclusion applies to the entire Policy, unless it is exempted. However, Frank Van's also purchased the Property Enhancement Endorsement which, in part, provides coverage for damage to records of its Accounts Receivables "caused by or resulting from a Covered Cause of Loss." Policy at 169-70. Here, the Virus Exclusion does not apply to prevent coverage in this specific and limited situation. So, based on this one provision where the Virus Exclusion is left out of the list of applicable exclusions, Frank Van's claims that the exclusion does not apply to the entire Policy.

Frank Van's offers an expansive—and incorrect—reading of the Property Enhancement Endorsement. First, it is not claiming coverage for damage sustained to its accounts receivable. So, this section of the Policy is inapplicable as a matter of fact. Second, its underlying logic does not comport with basic principles of contractual interpretation. The Endorsement is an optional amendment to an existing Policy to provide additional coverage—here, for the literal records of the insured's accounts receivables. But to the extent the amendment changes the terms of the Policy, it is as applied to the literal records of the insured's accounts receivables. Frank Van's asks the Court to interpret an otherwise limited Endorsement to wholesale remove the Virus Exclusion as to *all* claims.

The Court declines to find ambiguity where there is none, let alone to adopt a reading that is not reasonable. Frank Van's does not offer any other compelling argument as to why the Virus Exclusion does not bar its claim.

## B. Ordinance or Law Endorsement and Exclusion

Finally, Selective also moves to dismiss the Complaint as barred by the Policy's "Ordinance or Law" exclusion, even when modified by the "Ordinance or Law" endorsement as it is here.[7] Section I(B)(1)(a) provides that Selective "will not pay for loss or damage caused directly or indirectly by . . . .[t]he enforcement of or compliance with any ordinance or law [r]egulating the construction, use or repair of any property." Policy at 77. The Endorsement, however, reimburses the property owner for costs of complying with an ordinance or law obligating construction, demolition, and/or repair when "a Covered Cause of Loss causes or results in loss or damage to building." Policy at 190. In general, the Endorsement may cover the cost of complying with local building codes.

The Court finds each party's arguments as to the relevance and interpretation of the Ordinance or Law coverage flawed. In short, the Court questions whether either the Exclusion or the Endorsement apply here.

Selective must first establish that the shutdown orders are ordinances or laws covered by the Exclusion. The Court is doubtful that they are. And, at least one court has found otherwise. *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-CV-265, 2020 WL 7249624, at *13 (E.D. Va. Dec. 9, 2020). It is not disputed that Pennsylvania law grants the Governor authority to issue "[e]xecutive orders," which "have the force and effect of law." 35 Pa. C.S. § 7301(b). So, the first prong is satisfied; the closure orders issued by the Governor are functionally equivalent to ordinances or laws. But this does not answer the second concern— whether the closure orders regulate the construction, use, or repair of any property.

---

[7]  Frank Van's did not initially seek coverage under the "Ordinance or Law" endorsement, although it argues in response to Selective's argument based on the exclusion that the Endorsement applies. Doc. No. 15. For that reason, the Court will address the applicability of those provisions here.

Selective contends this Exclusion is relevant because the shutdown orders limited the "use" of non-essential businesses. But, in context, Selective stretches the meaning of the phrase "use ... of any property." The Court questions whether this Exclusion is designed to capture any uses of property—without limitation—particularly when "use" appears alongside "construction" and "repair." The latter words suggest that the exclusion relates to the physical structural integrity of the property. Indeed, this was the logic followed by the court in *Elegant Massage*, which distinguished the Executive Orders as "temporary restrictions" from "safety regulations or law" addressing the construction, repair and other physical aspects of the property. *Id.*

But Frank Van's reliance on the Endorsement is likewise misplaced. Reading the Exclusion and Endorsement together, the Endorsement provides coverage to an insured who, in the course of repairing or reconstructing the covered property, was impacted by a law or ordinance that delayed the project and/or increased costs. The Endorsement discusses five circumstances all concerning the physical repairs to the insured's premises, including demolition costs, increased cost of construction and physical improvement, and the increased amount of time to restore business operations. None of these speak to Frank Van's situation. Even if Frank Van's was to plead some "restoration" costs that were somehow increased—which it does not—it still has yet to plead "direct physical loss or damage" to its covered properties to trigger the Endorsement provision. As discussed throughout, *see supra* Section I, it has not done so.

So, although the Court doubts whether the Exclusion would bar coverage, Frank Van's cannot claim coverage in the first instance under the Endorsement either.

### IV. Doctrine of Reasonable Expectations

Despite the plain terms of the Policy, Frank Van's urges the Court to apply the doctrine of reasonable expectations to conform the Policy to its alleged expectations. Regardless of any ambiguity—or lack thereof—the Court's focus in interpreting an insurance contract is to effectuate

17

the reasonable expectations of the insured. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). To do so, the Court "must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005). Most of the time, the best evidence of the parties' reasonable expectations certainly focuses on the text of the Policy itself. *Newchops Rest. Comcast LLC*, 2020 WL 7395153, at *2.

But the doctrine can be applied when an insured relies upon the representations of an insurance company—which may not accurately represent the written contents of the policy that is issued. *Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 423 (E.D. Pa. 2016). The doctrine thus serves a corrective function to account for the disparity in bargaining power between the parties and to acknowledge the inherent complexity woven into hundred-plus page policy documents.

There may well be a potentially meritorious amendment as to Frank Van's reasonable expectations of the Policy's scope of coverage. It is yet unclear whether Frank Van's purchased the Policy with an expectation that it would be covered for losses of the sort it sustained due to the shutdown orders. At least one other court within the Circuit has denied an insurer's motion to dismiss to permit discovery when insured pled it bought the policy with the expectation the policy would cover losses from COVID-19 related shutdowns. *Humans & Res. LLC v. Firstline Nat'l Ins. Co.*, 2021 WL 75775 (E.D. Pa. Jan. 8, 2021). But that is presently not the case here as far as the Court is yet aware from the pleadings.

## V.     Leave to Amend

When, as here, a complaint is subject to a Rule 12(b)(6) dismissal, the Court should permit a curative amendment unless it would be futile or inequitable. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The Court will grant Frank Van's leave to amend its Complaint to include allegations about its reasonable expectations about the Policy's coverage. As set forth in the

18

accompanying order, Frank Van's shall have sixty (60) days to file an amended complaint, should it choose to do so.

## CONCLUSION

For the reasons set out in this Memorandum, the Court grants the motion to dismiss without prejudice but with leave to amend the Complaint. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE