IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK VAN'S AUTO TAG, LLC,** Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>**SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,**<br><br>      Defendant. | **CASE NO. 2:20-cv-02740-GEKP**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Frank Van's Auto Tag, LLC ("Plaintiff"), individually and on behalf of all other members of the below-defined nationwide Plaintiff classes (collectively, the "Insured Class"), brings this class action against Selective Insurance Company of the Southeast ("Selective" or "Defendant").  Plaintiff alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and on information and belief as to all other matters based upon the investigation of Plaintiff's counsel and their review of publicly available information, including news articles, press releases, and other publicly available information.

## NATURE OF THE ACTION

1.      Plaintiff owns and operates Frank Van's Auto Tags, with locations at 2450 Cottman Avenue, Philadelphia, PA 19149 and at 119 W. Lincoln Highway, Penndel, PA 19047. Plaintiff suffered significant economic losses due to the government-ordered shutdowns which prevented patrons' and employees' access to the property and prohibited the use of the businesses' premises for its intended purposes.  Plaintiff's losses continue to the present time.

2.      To protect the businesses in the event that it suddenly had to suspend operations for reasons outside of Plaintiff's control, Plaintiff purchased a policy of insurance from

Selective. The policy contained coverage extensions for Business Income, Extended Business Income, and Extra Expense, providing for payment of the actual loss of business income or extra expenses incurred by Plaintiff during a period of restoration. The policy further contains a Civil Authority provision, for payment of business income loss and/or extra expenses incurred due to an action of a civil authority prohibiting access to the property.

3.      Plaintiff was forced to suspend operations at its two locations due to orders issued by civil authorities in Pennsylvania mandating the suspension of business for on-site services to prevent potential exposure to COVID-19. Plaintiff was also required to take necessary steps to prevent further damage, minimize the suspension of business and avoid permanent closure. Plaintiff is not aware whether the insured premises were exposed to any known presence of, suspected presence of, the COVID-19 virus. However, one of Plaintiff's one employees became infected with the COVID-19 virus.

4.      Following timely notice of its claim, Plaintiff was denied business income and extra expense coverage by Selective. Upon information and belief, Selective has, on a wide-scale and uniform basis, refused to pay its insureds for losses suffered due to any executive orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations in response to COVID-19.

## THE PARTIES

5.      Plaintiff Frank Van's Auto Tag, LLC is a Pennsylvania limited liability company, and is a citizen of Pennsylvania. Plaintiff is the owner and operator of an automobile tag and title service business d/b/a Frank Van's Auto Tag with principal places of business at 2450 Cottman Avenue, Philadelphia, PA and at 119 W. Lincoln Highway, Penndel PA.

6.      Defendant Selective Insurance Company of The Southeast is a property and casualty company.  Selective is a citizen of Indiana, being organized under the laws of the State of Indiana with its headquarters and principal place of business located at 40 Wantage Avenue, Branchville, NJ 07890.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendant.  The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendant, as Defendant is registered to conduct business in this Commonwealth, regularly conducts business in Pennsylvania, and has sufficient contacts in Pennsylvania.  Defendant intentionally availed itself of this jurisdiction by conducting operations here and promoting, selling, and marketing Defendant's policies of insurance to resident Pennsylvania consumers and entities.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and the Plaintiff's insured property that is the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

**A.      The Selective Policy**

10.      In return for the payment of a premium, Selective issued Policy No. S 2209803 to Frank Van's Auto Tag, LLC, for a policy period covering April 29, 2019 to April 29, 2020 and from April 29, 2020 to April 29, 2021. *See Policy No. S 2209803*, attached hereto as Exhibit

"A." Plaintiff has performed all of its obligations under Policy No. S2209803, including the payment of the premium. The policy's Schedule of Locations includes 2450 Cottman Avenue, Philadelphia, PA and 119 W. Lincoln Highway, Penndel, PA.

11.     On or about April 17, 2020, Selective denied Plaintiff's claim stating that the "(i) the Claim does not satisfy the physical damage requirement for loss of business income coverage under the Policy or (ii) the Claim is otherwise excluded from coverage because any loss arises from a virus and the Policy expressly excludes coverage for loss or damage caused directly or indirectly by a virus." *See Selective Insurance Company of America Letter, dated April 17, 2020, at* 2, attached as Exhibit "B."

12.     In many parts of the world, property insurance is sold on a "named peril" basis. Such policies cover a risk of loss if that risk of loss is specifically listed. Most property policies sold in the United States, however, are all-risk policies. These types of policies cover all risks of loss except for risks that are expressly and specifically excluded. Selective's Policy is an "all-risk" policy of insurance.

13.     Pursuant to the policy's "Business Owners Coverage Form," Form BP 00 03 0713, the policy covers "'direct physical loss of or damage' to Covered Property at the 'premises' causes by or resulting from any Covered Cause of Loss."

14.     The Policy defines "Covered Cause of Loss" as "Direct physical loss unless the loss is excluded or limited under Section I – Property." *See Policy,* Form BP 00 03 0713, at page 2 of 53. Therefore, when the Policy does not expressly exclude a particular cause of physical loss of or damage to property, then the non-excluded peril triggers coverage.

15.     The policy provides business income coverage within the "Business Owners Coverage Form Coverage Form," Form BP 00 03 0713. The provision triggering Business

Income coverage: that "[w]e will pay for the actual loss of 'Business Income' …you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" and that the "loss" must be "caused by or result[ing] from" a Covered Cause of Loss.

16.     The policy also provides coverage for business income coverage caused by an act of civil authority.  Pursuant to the policy's Form BP 00 03 0713, "[w]hen a Covered Cause of Loss causes damage to property other than property at the described 'premises', we will pay for the actual loss of 'Business Income' and necessary Extra Expense caused by action of civil authority that prohibits access to the described 'premises.'"

17.     The Policy does not define the terms "physical," "loss," "physical loss" or "damage."  When undefined, these phrases are susceptible to more than one reasonable interpretation and should be construed against the drafter.

18.     As used in the Policy, the term "physical loss" is separate, distinct, and has an independent meaning from the term "damage."

19.     Plaintiff's loss of the ability to use its business premises for its intended business purposes was caused by the Closure Orders, mandating the closure of all non-essential businesses, and constitutes a covered "physical loss" within the meaning of an "all-risk" insurance policy.

20.     The policy's Business Income, Extended Business Income, Civil Authority and Extra Expense provisions contain no exclusion for losses caused by governmental orders issued to prevent exposure to a virus.

21.     Plaintiff purchased the aforementioned Policy expecting to be insured against losses, including, but not limited to, business income losses and extra expenses incurred at its two locations.

22.     Plaintiff purchased the Policy with an expectation that it was purchasing a policy that would provide coverage in the event of business interruption, enable it avoid or minimize the losses associated with the suspension of business operations and to offset extra expenses, such as those that Plaintiff suffered as a result of the Closure Orders.

23.     Plaintiff had a reasonable expectation that the Policy's business interruption coverage applied where a civil authority forced closure, thereby barring access to the business, due to an issue of public safety in the immediate area surrounding the Insured Property

24.     At the time of initial purchase, in approximately April 2016, Defendants did not notify Plaintiff that the all-risk policy contained exclusions and provisions that would deny the insured coverage for losses caused by COVID-19.

**B.      The Covered Cause of Loss**

25.     Efforts to prevent exposure to COVID-19 have caused civil authorities throughout the country to issue orders requiring the suspension of non-essential businesses and preventing citizens from leaving home for non-essential purposes (the "Closure Orders").

26.     Plaintiff's business is not considered "essential," and has therefore been subject to a variety of Closure Orders by state and local authorities, preventing Plaintiff from operating its businesses, limiting its operations, and/or from use of the premises for its intended purpose.

27.     These Closure Orders include, but are not limited to, Pennsylvania Governor Wolf's order dated March 19, 2020 requiring all non-life sustaining businesses in the Commonwealth to cease operations and close all physical locations.[1]  The Pennsylvania Supreme Court recently clarified that the Governor's order has resulted in the temporary loss of use of

---

[1]     *Available at* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order.  Last visited March 22, 2021.

non-essential business premises affected by the order, and that the order was issued to protect the lives and health of millions of Pennsylvania citizens. *See Friends of DeVito v. Wolf,* 227 A.3d 872, 96 (Pa. 2020). The Court determined that "[t]he COVID-19 pandemic is, by all definitions, a natural disaster and a catastrophe of massive proportions. Its presence in and movement through Pennsylvania triggered the Governor's authority under the Emergency Code." *Id. at* 888 – 9. Further, that "any location (including Petitioners' businesses) where two or more people can congregate is within the disaster area." *Id. at* 890. As a result, "the Governor has expansive emergency management powers including to 'direct and compel the evacuation of all or part of the population from any stricken or threatened area within this Commonwealth if this action is necessary for the preservation of life or other disaster mitigation, response or recovery.'" *Id. at* 890. The Court found that "the impact of the closure of these businesses caused by the exercise of police power is not unduly oppressive. The protection of the lives and health of millions of Pennsylvania residents is the *sine qua non* of a proper exercise of police power." *Id. at* 892.

28.     The Pennsylvania Supreme Court has not yet determined whether the closures in response to the COVID-19 pandemic causes "physical loss" to be covered by the various insurers' insurance policies under Pennsylvania law. Nor has the Court determined, as a matter of public policy, whether exclusions in insurance policies such as the Virus Exclusion upon which Selective relied, should be permitted to exclude claims, such as Plaintiff's here, alleging that the cause of the loss was the effect of the Closure Orders, and not the virus itself.

29.     Plaintiff was not aware of the presence of the COVID-19 virus at Plaintiff's covered properties, however, one of Plaintiff's employees did become infected with the virus. Since the initial filing of this action, the virus has been found to be highly transmissible, known to contaminate the air and ventilation systems, and remain on surfaces such as counters, point of

sale areas, longer than was initially understood.  Plaintiff's premises are highly trafficked and

with public spaces.  Such public spaces are particularly susceptible to circumstances favorable to

the impact of the easily transmitted nature of COVID-19 virus to property and people.

30.     Nevertheless, the issue of whether Plaintiff's business premises were actually

infested with the COVID-19 virus is irrelevant since the businesses were required to close, even

if Plaintiff were able to demonstrate that there was no COVID-19 virus present.  Accordingly,

given the extreme threat of infestation in the local communities, and in response to the Closure

Orders, Plaintiff was required to close both locations for an extended period of time.

31.     Both of Plaintiff's business locations were closed from March 19 to June 5, 2020.

Since June 5, 2020, Plaintiff's business locations have reopened but are limited to permitting two

customers at a time inside the business.  *See Van's Facebook post*, attached as Exhibit "C," (also

indicating mitigation measures taken to protect both employees and customers).

32.     Prior to reopening, Plaintiff was also required to comply with the Department of

Health's Procedures for Mitigation and Enforcement.  *See Order of the Secretary of the*

*Pennsylvania Department of Health for Mitigation and Enforcement*, *November 27, 2020*,

attached hereto as Exhibit "D."  This Order dictates pre-reopening cleaning, mitigation, testing

and use of PPE protocols for retail establishments to follow in order to resume operations.

33.     Plaintiff experienced a "Covered Cause of Loss" by virtue of the Closure Orders,

which denied use of the premises by causing a necessary suspension of operations during a

period of restoration.  The Closure Orders operated as a barricade that prevented employees and

patrons from entering and operating the business for its intended purpose.

34.     Whether actual and/or threatened, the presence of COVID-19 particles at the

Plaintiff's covered premises rendered the premises damaged, unusable, uninhabitable, unfit for

intended function, dangerous, and unsafe.  Additionally, whether actual and/or threatened, the presence of COVID-19 particles at the Plaintiff's covered premises impaired and diminished the premises' utility and normal function.  Under Pennsylvania law, in cases "where sources unnoticeable to the naked eye have allegedly reduced the use of the property to a substantial degree" the phrase "direct physical loss of or damage to" the property means that the property's functionality "was nearly eliminated or destroyed" or that the "property was made useless or uninhabitable." *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 826 – 7 (3d Cir. 2005).  Accordingly, Plaintiff has sustained a "Covered Cause of Loss" requiring Selective to reimburse Plaintiff for its loss of business income and/or extra expenses incurred since March 19, 2020.

35.     The government-mandated Closure Orders that restricted "non-essential" business owners from accessing and/or occupying the premises and conducting regular business with customers constitutes an "action of civil authority that prohibits access to the described premises" that is required for coverage under the Policy.

36.     Whether actual and/or threatened, Plaintiff was required to completely suspend its business operations a result of the Closure Orders until June 5, 2020.  As a result, Plaintiff experienced a loss of business revenue, lost profits, and additional costs for cleaning the premises prior to reopening, and on multiple occasions since.  Further, Plaintiff was required to purchase masks, gloves and other PPE and cleaning supplies in order to protect customers entering the premises.  Plaintiff incurred additional payroll expenses related to cleaning costs and not to normal sales and customer service activities.

37.     The Covered Cause of Loss triggered coverage pursuant to the Business Income, Extended Business Income, Extra Expense, and Civil Authority provisions of the policy.

a. Pursuant to the Business Income coverage provisions within the "Building Owners Coverage Form," Form BP 00 03 0713, Selective promised that it will "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of your restoration.'"

b. Pursuant to the Policy's Extended Business Income provision, Selective promised that "[i]f the necessary suspension of your operations produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur . . .."

c. Pursuant to the Extra Expense provisions, Selective promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

d. This Covered Cause of Loss also caused a direct physical loss or damage to property *other* than at Plaintiff's premises, and prohibited access to the Plaintiff's premises – thereby triggering coverage under the policy's Civil Authority provision. Pursuant to the Civil Authority coverage extension, Selective promised that "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of 'Business Income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . .."

38. The Virus or Bacteria exclusion does not apply to Plaintiff's claims. Plaintiff's covered cause of loss is not the virus, since the presence or absence of the COVID-19 virus on the premises had no effect upon the closure or the loss of business. Rather, Closure Orders

applied to all non-essential businesses regardless of their exposure to the virus and Plaintiff's business was required to close as a result of the Closure Orders.

39.     In order to reopen the covered premises, Plaintiff was required to upgrade the counter areas to provide shields to separate employees from customers.

40.     No other exclusions listed in the Policy are applicable.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individual and on behalf of all others similarly situated.

42.     Plaintiff seeks to represent nationwide classes defined as:

    a.    All persons and entities that: (a) had Business Income, Extended Business Income and Extra Expense coverage under a property insurance policy issued by Selective; (b) suffered a suspension of business related to the Closure Orders, at the premises covered by Selective's property insurance policy; (c) made a claim under their property insurance policy issued by Selective; and (d) were denied Business Income coverage by Selective for the suspension of business resulting from the Closure Orders (the "Business Income Breach Class").

    b.    All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Selective; (b) suffered loss caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Selective; and (d) were denied Civil Authority coverage by Selective for the loss caused by a Closure Order (the "Civil Authority Breach Class").

    c.    All persons and entities with Business Income, Extended Business Income and Extra Expense coverage under a property insurance policy issued by Selective that suffered a suspension of business due to a Closure Order at the premises covered by the Business Income coverage (the "Business Income Declaratory Judgment Class").

    d.    All persons and entities with Civil Authority coverage under a property insurance policy issued by Selective that suffered loss

of Business Income and/or Extra Expense caused by a Closure
Order (the "Civil Authority Declaratory Judgment Class").

43.     Excluded from each defined class is Defendant and any of its members, affiliates,

parents, subsidiaries, officers, directors, employees, successors, or assigns; and any

governmental entities.  Plaintiff reserves the right to modify or amend each of the class

definitions, as appropriate, during the course of this litigation.

44.     This action has been brought and may properly be maintained on behalf of each

class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

45.     **Numerosity – Federal Rule of Civil Procedure 23(a) (1).**  The members of each

defined Class are so numerous that individual joinder of all class members is impracticable.

While Plaintiff is informed and believes that there are thousands of members of each class, the

precise number of Class members is unknown to Plaintiff but may be ascertained from

Defendant's books and records.  Class members may be notified of the pendency of this action

by recognized, Court-approved notice dissemination methods, which may include U.S. Mail,

electronic mail, internet postings, and/or published notice.

46.     **Community and Predominance – Federal Rule of Civil Procedure 23(a) (2)
and 23(b)(3).**  This action involves common questions of law and fact, which predominate over

any questions affecting only individual class members, including, without limitation:

      a.   Whether the class suffered a covered loss based on the common policies
          issued to members of the class;

      b.   Whether Selective wrongfully denied all claims based on the wrongful
          application of one or more policy exclusions;

      c.   Whether Selective's Business Income coverage applies to a suspension of
          business caused by a Closure Order;

d.   Whether Selective's Extended Business Income coverage applies to a
suspension of business caused by a Closure Order;

e.   Whether Selective's Extra Expense coverage applies to a suspension of
business caused by a Closure Order;

f.   Whether Selective's Civil Authority coverage applies to a loss of Business
Income caused by a Closure Order;

g.   Whether Selective has breached its contracts of insurance through a blanket
denial of all claims based on business interruption, income loss or closures
related to the Closure Orders; and

h.   Whether Plaintiff and the classes are entitled to an award of reasonable
attorneys' fees, expenses, interest and costs.

47.     **Typicality – Federal Rule of Civil Procedure 23(a) (3).**  Plaintiff's claims are
typical of the other class members' claims because Plaintiff and the other class members are all
similarly affected by Defendant's refusal to pay under its Business Income, Extended Business
Income, Extra Expense, or Civil Authority coverages.  Plaintiff's claims are based upon the same
legal theories as those of the other Class members.  Plaintiff and the other class members
sustained damages as a direct and proximate result of the same wrongful practices in which
Defendant engaged.

48.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**
Plaintiff is an adequate class representative because its interests do not conflict with the interests
of the other Class members who it seeks to represent, Plaintiff has retained counsel competent
and experienced in complex class action litigation, and Plaintiff intends to prosecute this action

vigorously.  The interests of the above-defined classes will be fairly and adequately protected by Plaintiff and its counsel.

49.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests – Federal Rule of Civil Procedure 23(b) (1).**  Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Extended Business Income, Extra Expense, and Civil Authority Coverages.  The prosecution of separate actions by individual members of the classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant.

50.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b) (2).**  Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the class members.

51.     **Superiority – Federal Rule of Civil Procedure 23(b) (3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT-BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

52.     Plaintiff realleges the above paragraphs as if fully set forth herein.

53.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

54.     Plaintiff's policies, as well as those of the other Business Income Breach Class members, are contracts under which Selective was paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Breach Class members' losses for claims covered by the policy.

55.     In its policy, Selective provided Business Income, Extended Business Income, Extra Expense, and Civil Authority coverage extensions.

56.     Selective agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" pursuant to the coverage provisions in "Business Owners Coverage Form" BP 00 03 0713.

57.     Pursuant to the Business Income coverage provisions within the "Business Owners Coverage Form," Form BP 00 03 0713, Selective promised that "If the necessary suspension of your "operations' produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur. . . .'"

58.     Pursuant to the form's Extra Expense provision, Selective promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

59.     The Closure Orders caused direct physical loss and damage to Plaintiff and the other Business Income Breach Class members' Scheduled Premises, requiring the suspension of

operations at the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the business income, extended business income, and extra expense provisions of Plaintiff's and the other Breach Class members' policies.

60.     The Closure Orders also caused direct physical loss and damage to property *other* than Plaintiff and the other Business Income Breach Class members' premises, resulting in a prohibition of access to the premises.  Losses caused by the Closure Orders thus triggered the civil authority provision of Plaintiff's and the other Business Income Breach Class members' policies.

61.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Selective, or Selective is estopped from asserting them, and yet Selective has abrogated its insurance coverage obligations.

62.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members, Selective has breached its coverage obligations under the policies.

63.     As a result of Selective's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Selective is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT-CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

64.     Plaintiff realleges the above paragraphs as if fully set forth herein.

65.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

66.     Plaintiff's policies, as well as those of the other Civil Authority Breach Class members, are contracts under which Selective was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Breach Class members' losses for claims covered by the policy.

67.     In its policy, Selective provided Business Income, Extended Business Income, Extra Expense, and Civil Authority coverage extensions.

68.     Selective agreed to pay for its insureds' actual loss of Business Income and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises pursuant to the coverage provisions in "Business Owners Coverage Form" BP 00 03 0713.

69.     Pursuant to the Business Income coverage provisions within the "Business Owners Coverage Form," Form BP 00 03 0713, Selective promised that "When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises...'"

70.     Pursuant to the form's Extra Expense provision, Selective promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

71.     The Closure Orders caused direct physical loss and damage to Plaintiff and the other Civil Authority Breach Class members' Scheduled Premises, requiring the suspension of operations at the Scheduled Premises.  Losses caused by the Closure Orders thus triggered the business income, extended business income, extra expense and civil authority provisions of Plaintiff's and the other Civil Authority Breach Class members' policies.

72.     The Closure Orders also caused direct physical loss and damage to property *other* than Plaintiff and the other Civil Authority Breach Class members' premises, resulting in a prohibition of access to the premises.  Losses caused by the Closure Orders thus triggered the civil authority provision of Plaintiff's and the other Civil Authority Breach Class members' policies.

73.     Plaintiff and the other Civil Authority Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Selective, or Selective is estopped from asserting them, and yet Selective has abrogated its insurance coverage obligations.

74.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Civil Authority Breach Class members, Selective has breached its coverage obligations under the policies.

75.     As a result of Selective's breaches of the policies, Plaintiff and the other Civil Authority Breach Class members have sustained substantial damages for which Selective is liable, in an amount to be established at trial.

**COUNT III**
**DECLARATORY JUDGMENT**
**(Claim Brought on Behalf of the Business Income Declaratory Judgment Class)**

76.     Plaintiff realleges the above paragraphs as if fully set forth herein.

77.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

78.     Plaintiff's policies, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Selective was paid premiums in exchange

for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

79.     Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Selective, or Selective is estopped from asserting them, and yet Selective has abrogated its insurance coverage obligations.

80.     Selective has denied claims related to Coverage Orders on a uniform and class-wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

81.     An actual case or controversy exists regarding Plaintiff's and the other Business Income Declaratory Judgment Class members' rights and Selective's obligations under the policies to reimburse Plaintiff for the full amount of losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

82.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

      a.  Plaintiff and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders are insured losses under their policies; and

      b.  Selective is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

83.    Plaintiff realleges the above paragraphs as if fully set forth herein.

84.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

85.    Plaintiff's policies, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Selective was paid premiums in exchange for its promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

86.    Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Selective, or Selective is estopped from asserting them, and yet Selective has abrogated its insurance coverage obligations.

87.    Selective has denied claims related to Coverage Orders on a uniform and class-wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim for coverage.

88.    An actual case or controversy exists regarding Plaintiff's and the other Civil Authority Declaratory Judgment Class members' rights and Selective's obligations under the policies to reimburse Plaintiff for the full amount of losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with suspension of their businesses in connection with the Closure Orders.

89.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

20

a.   Plaintiff and the other Civil Authority Declaratory Judgment Class members'
Business Income losses incurred in connection with the Closure Orders are
insured losses under their policies; and

b.   Selective is obligated to pay Plaintiff and the other Civil Authority Declaratory
Judgment Class members for the full amount of the Business Income losses
incurred and to be incurred in connection with the Closure Orders during the
period of restoration and the necessary interruption of their businesses.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and the proposed classes, requests the
following relief:

a.   Certify the proposed Breach Classes and Declaratory Judgment classes, appoint
Plaintiff as the class representative and lead plaintiff, and approve its selection of
lead counsel;

b.   Entering judgment on Counts I and II in favor of Plaintiff and the members of the
Business Income Breach Class and the Civil Authority Breach Class, and
awarding damages for breach of contract in an amount to be determined at trial;

c.   Entering declaratory judgments on Counts III and IV in favor of Plaintiff and the
members of the Business Income Declaratory Judgment Class and the Civil
Authority Judgment Class as follows:

i.   Plaintiff's and the other Declaratory Judgment Class members'
Business Income, Extended Business Income, Extra Expense and Civil
Authority losses incurred in connection with the Closure Orders are
insured losses under their policies; and

        ii.   Selective is obligated to pay Plaintiff and the other Declaratory Judgment Class members for the full amount of the Business Income, Extended Business Income, Extra Expense and Civil Authority losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses.

d.     Grant compensatory, exemplary and punitive damages as may be appropriate under law.

e.     Award Plaintiff and the classes reasonable attorneys' fees, expenses, costs and pre-judgment and post-judgment interest at the maximum rate as may be allowed by law.

f.     Grant such additional or different relief as the interests of justice or equity may require.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of itself and the proposed classes, hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Dated: March 26, 2021

                      **EDELSON LECHTZIN LLP**

                      By:  *s/ Marc H. Edelson*
                      **EDELSON LECHTZIN LLP**
                      Marc H. Edelson, Esq.
                      Eric Lechtzin, Esq.
                      Liberato P. Verderame, Esq.
                      3 Terry Drive, Suite 205
                      Newtown, PA 18940
                      Telephone: 215-867-2399
                      Facsimile: 267-685-0676
                      medelson@edelson-law.com
                      elechtzin@edelson-law.com
                      lverderame@edelson-law.com

**SHUB LAW FIRM LLC**
Jonathan Shub, Esq.
134 Kings Highway East, 2nd Floor
Haddonfield, NJ 08033
Telephone:
Facsimile:
jshub@shublawyers.com
klaukaitis@shublawyers.com

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Telephone: 267-507-6085
Facsimile:
Jgrabar@grabarlaw.com

*Attorneys for Plaintiff*